IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESLIE GUZZO and<br>DIANE NATALE, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Civil Action No. 05-933 |
| v. | ) <br> ) | Judge Flowers Conti<br>Magistrate Judge Caiazza |
| QUEEN OF ANGELS SCHOOL, | ) <br> ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendant's Motion for Summary Judgment (Doc. 38) be denied.

### II. REPORT

**BACKGROUND**

The Plaintiffs Leslie Guzzo and Diane Natale bring this age discrimination lawsuit against their former employer Queen of Angels School ("the Defendant" or "the School"). *See generally* Compl. (Doc. 1). As a result of budgetary constraints, in June 2004 the School was required to and did cut its teaching and non-teaching payroll by $150,000. *See* Def.'s Statement of Facts (Doc. 39) at ¶ 54. Although the hours of some staff members were reduced and others voluntarily resigned, the Plaintiffs were the only teachers whose employment was terminated.

*See* Def.'s Br. (Doc. 44) at 4-5 *and* Pls.' Opp'n Br. (Doc. 45) at 6 (citing record evidence).[1]

The decision to terminate the Plaintiffs was made by the School's newly appointed principal, Marie Sonnet ("Ms. Sonnet" or "the Principal"). *See* Def.'s Facts at ¶¶ 53-54. The Plaintiffs have provided, with the support of record evidence, information regarding the teachers from whom Ms. Sonnet had to choose in making her determinations:

| Teacher | Age | Assignment | Degree | Yrs. Seniority | Certification |
|---|---|---|---|---|---|
| Judy Skoretz | 57 | 7th Grade | Bachelors | 11 | K-8 II |
| **Leslie Guzzo** | **55** | **2nd Grade** | **Masters** | **11** | **K-6 II** |
| Mary K. Plank | 53 | 3rd Grade | Bachelors | 11 | K-6 II |
| Debbie Ploskina | 52 | 1st Grade | Bachelors | 11 | K-6 II |
| Rox. Benkovich | 52 | Religion | Bachelors | 11 | K-6 II |
| **Diane Natale** | **50** | **Art** | **Masters** | **8** | **K-6 II** |
| Sandee Farrell | 49 | Pre-K | Bachelors | 9 | N-3 II |
| Janet Campbell | 47 | 4th Grade | Bachelors | 5 | K-6 I |
| Linda Holsopple | 45 | Computer | Bachelors | 11 | K-6 II |
| Beth Babyak | 45 | 7th Grade | Bachelors | 0 | K-6 Science I |
| Patty DeLisio | 45 | Phys Ed | Bachelors | 8 | K-12 Phy Ed I |
| Janine Bell | 44 | 8th Grade | Bachelors | 2 | K-6 I |
| Judy Sawl | 43 | 3rd Grade | Bachelors | 3 | K-6 I |
| Joseph Coghill | 40 | 4th Grade | Bachelors | 5 | K-6 I |
| Brenda Osinski | 39 | Music | Bachelors | 5 | K-12 |
| Michelle Yakel | 38 | 1st Grade | Bachelors | 4 | K-6 I |
| Denise Horchar | 37 | 5th Grade | Bachelors | 0 | K-6 I |
| Becky Best | 37 | Drama | Unknown | ? | Unknown |
| Kim Swankler | 34 | 2nd Grade | Masters | 10 | K-6 II |
| Erin Durante | 34 | 5th Grade | Bachelors | 4 | K-6 I |
| Lori Farrell | 33 | 1st Grade | Bachelors | 9 | N-3 II |
| Melissa Houston | 30 | K | Bachelors | 5 | N-3 I |
| Jennifer Catalano | 27 | K | Masters | 4 | K-6 II |

Pls.' Br. at 5 (citing record evidence).

---

[1] The Defendant includes in its factual analyses the non-teaching staff who were terminated (a librarian and teaching assistants) and those teachers who voluntarily resigned. *See generally* Def.'s Br. at 4-5. The non-teaching staff were not similarly situated to the Plaintiffs, and the teachers who resigned were not the subject of adverse employment action. Thus, the aforementioned individuals should play no part in the court's discrimination analyses.

According to Ms. Sonnet, her decision to terminate Ms. Guzzo resulted from an interview conducted with the Plaintiff to determine which teachers would be retained.  *See generally* Def.'s Br. at 5.  According to the Principal, Ms. Guzzo "stated that she had difficulty disciplining second grade students and she asked [Ms.] Sonnet some questions about her approach to disciplining students. . . .  This comment led [Ms.] Sonnet to draw conclusions concerning [Ms.] Guzzo's relative qualifications, as did some comments [the Plaintiff] made regarding her low self-confidence [in connection with] computers and technology."  *Id.* (citing record evidence).  As a result, the Principal decided Ms. Guzzo would be laid off.  *Id.*

Regarding Ms. Natale, Ms. Sonnet "determined that discontinuing the art program" taught by her "would be necessary in order to achieve the budget reduction."  *Id.* at 6.

**ANALYSIS**

    **1.**    **The Plaintiffs Have Stated A *Prima Facie* Case of Age Discrimination.**

The School argues that the Plaintiffs have not state a *prima facie* case because, (a) they cannot show themselves to have been replaced by sufficiently younger individuals, and (b) they cannot identify comparators ten or more years younger who were retained.  *See* Def.'s Br. at 9 (citing Sixth Circuit precedent stating that ten years age-difference is required between plaintiffs and their comparators).  Neither of these arguments are consistent with the applicable law.

Through the Defendant's own admissions and characterizations, the Plaintiffs' termination was the result of a reduction in force ("RIF").  *See, e.g.*, Def.'s Br. at 10 ("Queen of Angels has provided uncontroverted evidence that it was undergoing a financial shortfall as a result of declining student enrollment, and that the shortfall <u>necessitated a reduction in the numbers of</u>

teaching staff.") (emphasis added).  Within this context, the final element of the *prima facie* case focuses on whether "workers were retained" who were "sufficiently younger" than the Plaintiffs at the time of their discharge.  Showalter v. UPMC, 190 F.3d 231, 235 (3d Cir. 1999) (citations omitted).  Contrary to the Defendant's suggestion, the "sufficiently younger" standard applied in this Circuit is not the ten-year measure adopted by the Sixth Circuit Court.  *See id.* at 236 (under "the sufficiently younger standard, . . . there is no particular age difference that must be shown, [although] [d]ifferent courts have held . . . that a five year difference can be sufficient," and "a one year difference cannot") (citation and internal quotations omitted, some alterations supplied).

Here the Plaintiffs have identified a number of teachers, retained through the RIF or not terminated, who were five or more years younger than them at the time of discharge.  *See* chart, *supra*.  The Plaintiffs easily satisfy their *prima facie* burden, and the Defendant's arguments are without merit.

>    **2.    The Plaintiffs Have Sufficiently Refuted the School's Articulated Non-Discriminatory Reasons for the Purposes of Summary Judgment.**

Once an employer answers the *prima facie* case with legitimate, non-discriminatory reasons for its action, the Plaintiff must come forward with evidence from which a factfinder could reasonably either (a) disbelieve the employer's articulated legitimate reasons (*i.e.*, show pretext); or (b) believe that an invidious discriminatory reason was more likely a motivating or determinative cause of the employer's action.  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).  The Plaintiffs survive summary judgment under both standards.

As to pretext, the School first argues that "[n]o evidence has been presented to cast doubt" on the facts that there was a budgetary shortfall and a reduction in force was required. *See* Def.'s Br. at 9-10. In a RIF case, however, the Defendant's argument merely begs the question. There is no doubt that positions needed to be reduced or eliminated; the issue is why these two teachers were singled out for termination. Under the circumstances, the School's evidence that a RIF was underway does not even qualify as a legitimate non-discriminatory reason for choosing to terminate the Plaintiffs, and counsel's argument is unavailing.

Turning specifically to Ms. Guzzo, the Principal relied on the Plaintiff's purported statements that she had difficulty disciplining students and had low self confidence regarding computers and technology. *See* discussion *supra*. Ms. Guzzo categorically denies having made these comments, *see* Pls.' Resp. to Def.'s Facts (Doc. 43) at ¶¶ 65-66, and this creates a material dispute of fact. *Id.*; *cf. also* Def.'s Facts at ¶ 20 (addressing testimony that Ms. Sonnet told Plaintiff she was being terminated because she "was intimidated by younger teachers").[2] Summary judgment therefore is inappropriate.

As to Ms. Natale, the only explanation offered for her termination was the Principal's decision that the art program would be discontinued because of the budgetary shortfall.

---

[2] The School also attempts to diffuse the evidence of pretext by highlighting its offering of a second grade position to Ms. Guzzo in November 2004. *See* Def.'s Br. at 5-6. This offer was made after Ms. Guzzo had retained counsel and served her EEO charge of discrimination on the Defendant. *See* Pls.' Resp. to Def.'s Facts at ¶ 23. The Plaintiff's decision to decline the offer does not defeat her evidence of pretext.

Somewhat relatedly, the School notes that Ms. Natale was advised upon termination that, "if" enrollment increased, "she might be" offered a five hour per week part-time position. *See* Def.'s Br. at 6. This equivocal offer of future employment, which never came to fruition, has no place in the court's analyses.

*See* discussion *supra*. This argument goes little further than "the RIF made us do it" theory rejected above, as no explanation has been provided why the art program was singled out for exclusion. Record evidence confirms that two other fine arts programs survived the RIF, as teachers remained staffed for both music (Brenda Osinski, age 39) and drama (Becky Best, 37) . *See generally* Def.'s Br. at 4-5 (citing record evidence). Absent some non-discriminatory explanation for the decision to eliminate only one of the three fine art programs at the School, a jury reasonably may infer that the discontinuation of the class taught by Ms. Natale was pretext for discrimination.

     Even assuming Ms. Sonnet had a plausible non-discriminatory reason for terminating the art program, the School has failed to adequately demonstrate why Ms. Natale was not considered for one or more of the teaching positions that remained. As referenced above, this Plaintiff possessed a Masters degree, had eight years of tenure at the School, and was certified to the "K-6 II" level. *See* discussion *supra*. Ms. Natale had teaching experience not only in art, but in library, middle school study skills, remedial reading and math, third and fifth grade classes, and she substitute taught in every grade. *See* Pls.' Opp'n Br. at 4 (citing record evidence). The Plaintiff has put forth evidence, moreover, that the Principal employed numerous teachers who were not certified in the areas where they were assigned, and that through the reorganization younger teachers were assigned into grade levels and areas they had not previously taught. *See id.* at 8, 13-14. This evidence must be read in a light most favorable to the non-moving Plaintiffs, and the School's failure to consider reassigning Ms.' Natale and Guzzo despite its largely unrestrained approach in connection with younger teachers precludes the entry of summary judgment.

The Plaintiffs also may survive summary judgment by presenting circumstantial evidence that discrimination was more likely than not a motivating cause of the adverse employment action. *See* discussion *supra*. Here, the Plaintiffs' summary chart regarding themselves and those teachers not terminated brings into focus some striking comparisons. Ms. Guzzo was the second oldest teacher, there was no one with greater seniority, she was one of only four teachers with a Masters degree, and she was certified to the K-6 II level. *See* discussions *supra*. Ms. Natale was the sixth oldest and sixth most tenured of the twenty-three teachers, she also had her Masters, and she was certified to the K-6 II level. *See id.*

The termination of these older, more tenured, and highly educated teachers causes them to stand out in stark comparison to many of the younger individuals not selected for termination. *See id.*; *see also generally* Def.'s Facts at ¶ 59 (decisions regarding RIF were based on, among other things, "advanced degrees, permanent certification, [and] professional development credits"); Pls.' Resp. to Def.'s Facts (Doc. 48) at ¶ 6 (according to Plaintiff, Ms. Sonnet stated "she would take into consideration our credentials . . . -- if we had a master's degree, . . . our years of teaching, our Act 48 credits"). These circumstances, alone and in conjunction with the other evidence of pretext, are sufficient to defeat the Defendant's entitlement to summary judgment.[3]

---

[3] Under the second prong of Fuentes, a plaintiff "must point to evidence that proves age discrimination in the same way that critical facts are generally proved -- based solely on the natural probative force of the evidence." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1111 (3d Cir. 1997). The types of evidence this may include is less than entirely clear. *Cf., e.g.*, Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998) (Fuentes' second prong may include evidence "the employer has previously discriminated against the plaintiff, that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class") (citation omitted); Marione v. Metropolitan Life Ins. Co.,

For all of the reasons stated above, the Defendant's Motion for Summary Judgment should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by March 5, 2007. Responses to objections are due by March 15, 2007.

February 15, 2007

*Francis X. Caiazza*
Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Cynthia S. Goldstein, Esq.
Douglas B. McKechnie, Esq.
R. Russell Lucas, Jr., Esq.

---

2006 WL 2134650, *4 (3d Cir. Jul. 31, 2006) (considering possibility that second prong may be met through "age statistics show a pattern of discrimination"). Even assuming the undersigned's observations regarding the comparison chart do not qualify under the second prong of Fuentes, they also may be considered as further evidence of pretext.